## Mulligan v. E. Keeler Company et al.

W. W. Champion, for plaintiff; Humes & Baird, for defendants.

LARRABEE, J., July 24, 1933.—This case comes before the court on an appeal from an opinion and decree of the Workmen's Compensation Board affirming

the findings of fact, conclusions of law, and award made by the referee in the Bureau of Workmen's Compensation of the Commonwealth of Pennsylvania for District No. 5 in the above-entitled claim.

It appears from the testimony that the claimant, Harry R. Mulligan, was, at the time the injuries complained of, employed by E. Keeler Company, defendant, at its manufacturing plant in the City of Williamsport. On April 8, 1932, at about 3:45 p. m., while the claimant was at work at the said plant of the defendant and engaged in setting up a boiler weighing about 12,000 pounds and was in the act of lifting on a bar which was resting on his shoulder, the bar slipped, and plaintiff says: "[I] went to grab myself and I felt this pain in my side." Claimant further testifies that at that time he experienced "kind of a cramp and a stinging pain in my side," and that it made him "about half sick." He said he did not do anything more that day "but just walk around and watch the other fellows work and see that they did the work."

Said accident and the injury alleged to have resulted immediately therefrom occurred on Friday, April 8, at 3:45 p. m., and the claimant reported the accident to the employer the following Monday morning.

The claimant, Harry R. Mulligan, filed his claim for compensation benefits and an award was made in his favor by Edward P. Mackey, workmen's compensation referee for the Fifth District, who awarded him compensation from April 16, 1932, up to June 20, 1932, a period of 65 days, at the maximum rate of $15 per week, amounting to the sum of $139.28, and also for reasonable medical services and hospital expenses incurred by plaintiff during the first 30 days incurred by his disability, which began on April 9, 1932. From this order and award an appeal was taken by E. Keeler Company, defendant, through its insurance carrier, Pennsylvania Manufacturers Association Casualty Insurance Co., to the Workmen's Compensation Board, which, in an opinion filed October 18, 1932, affirmed the findings of fact, conclusions of law, and award made by the referee and dismissed defendant's appeal.

From this opinion and order of the Workmen's Compensation Board an appeal was taken by the defendant to the Court of Common Pleas of Lycoming County, and the record was duly certified to this court by the chairman of the board.

The exceptions filed by the defendant to the opinion and order entered by the Workmen's Compensation Board are listed as follows:

"1. The Workmen's Compensation Board erred in the order entered in the case, the order being as follows:

" 'The findings of fact, conclusions of law, and award filed by the referee are affirmed. The appeal is dismissed.'

"2. Both the referee and Workmen's Compensation Board erred in holding under the testimony adduced in the case that the claimant is entitled to compensation for hernia.

"3. The referee erred in that portion of his third finding of fact wherein he decided '. . . that the claimant Harry R. Mulligan met with an injury . . . in the nature of an indirect left inguinal hernia and . . . is to be compensated accordingly.'

"4. The referee erred in that portion of his third finding of fact wherein he decided that '. . . as April 10, 1932, was a Sunday, the happening was properly reported on Monday morning, April 11, 1932, as coming within the 48-hours' notice required by our act.'

"5. The referee erred in his conclusion of law to the effect that the claimant, Harry R. Mulligan, should be compensated by the defendant or its insurance carrier for his injury."

As to the province of the Court of Common Pleas in appeals in workmen's compensation cases, the Supreme Court has laid down the guiding principle in numerous decisions and reaffirmed the same in the recent case of Slemba v. Hamilton & Sons, 290 Pa. 267, as follows:

"It must be remembered that, in reviewing such findings, we do not analyze the evidence, for the purpose of determining on which side the weight thereof lies. That is the duty of the compensation authorities. So far as we are concerned, if there is competent evidence to sustain the findings, we accept them as true; Rodman v. Smedley, 276 Pa. 296; Vorbnoff v. Mesta Machine Co., 286 Pa. 199. Whether or not there is such competent evidence, is a question of law, and, to determine this, we review the evidence; but if, in so doing, we find that there is, we go no further on the point, for those authorized by law to find the facts have done so, and, under such circumstances, we are bound thereby."

And in Kuca v. Lehigh Valley Coal Co., 268 Pa. 163, the Supreme Court further said on this question:

"The legislature has confided to the compensation board and referees the exclusive function of determining what facts are established."

This appeal raises two questions for solution:

First, is there sufficient competent evidence to support the award of the referee that the claimant met with an injury in the nature of an indirect inguinal hernia in the course of his employment and at the time complained of?

Second, were the referee and the Workmen's Compensation Board warranted in concluding that the notice given by the claimant to his employer on Monday morning, April 11, 1932, was a compliance with the requirement as to 48-hours' notice contained in the Act of April 13, 1927, P. L. 186, pertaining to hernia?

As to this first question raised, the court finds that there was competent evidence to support the finding of the referee that the claimant met with an injury while engaged in his work for the defendant company on April 8, 1932, which resulted immediately in an indirect left inguinal hernia. A review of the testimony shows that the claimant testified that while he was engaged in lifting on an iron bar, which rested on his shoulder, while setting up a large boiler weighing 12,000 pounds, the bar "slipped" and, as claimant testified, he "went to grab myself and I felt this pain in my side"; that the pain he then experienced was a "kind of a cramp and a stinging pain in my side. I stood there about 10 minutes until it eased up a little"; that it made him "about half sick"; and that he did not do anything more that day "but just walk around and watch the other fellows work, and see that they did the work."

On the day following the accident, Saturday, the claimant testified:

"On Saturday I felt pretty good; it pained some, but I was anxious to work and on Saturday night it started swelling up and on Sunday morning I got hold of the doctor."

The testimony of claimant's physician and surgeon, Dr. E. Lloyd Rothfuss, is that claimant reported to him on Sunday, April 10th; he made an examination on that date and found the claimant suffering from the following condition:

"He had a great deal of soreness over his left inguinal region, there was a little bulging through the canal, and also a slight hemorrhage along the muscle to the scrotum. That is what gave him so much pain."

The doctor was then asked:

"Doctor, did you diagnose it at the time of your first examination as a hernia," to which he replied:

"As a hernia plus; he had more than a hernia. I found more than I expected to."

The doctor, when asked why he believed this hernia was of recent origin, replied: "The oedema of the tissues and the fresh hemorrhage." Dr. Rothfuss then testified that he operated on the claimant on the following April 18th, and "found a hernia between the canals—the external and the internal; also a ruptured vessel extending down along the scrotal muscle into the scrotum."

When asked, "What sort of a hernia do you call this," he answered "indirect inguinal hernia." When Dr. Rothfuss was asked whether in his opinion claimant's condition was "the result of an accident or trauma," he answered:

"It was—it was of very recent origin. I went to the house the 11th, the 13th, and the 16th and kept ice on him. He suffered a great deal of pain, in fact I have never taken care of a hernia that gave more pre-operative pain than this did."

No testimony, medical or otherwise, was offered by defendant in denial of this testimony.

Futhermore, it does not appear from the testimony that the claimant had ever previously suffered from any hernia or rupture of any kind. This same physician, who attended claimant in the instant case, testified that he had operated on claimant for appendicitis the preceding year, on August 6, 1931, and this would indicate that claimant was suffering from no left inguinal hernia so recently as this last-mentioned date.

From the fact that claimant was engaged in his regular work in a boiler factory and able to do heavy lifting while setting up a boiler weighing 12,000 pounds, which it is readily apparent would necessitate considerable straining of the muscles, the court is satisfied that there was ample competent testimony to support the finding of the referee that this hernia was sustained by claimant while engaged at his regular employment on the afternoon of April 8, 1932. See Rouleau v. P. Hughes & Son et al., 100 Pa. Superior Ct., 390, 394, where the Superior Court said:

"Under this evidence the referee and board were justified in concluding that claimant's hernia had not resulted from the gradual and ordinary development of a physical weakness or defect but was 'immediately precipitated' by a 'severe strain;' that it occurred in immediate connection with its cause; that its descent was accompanied by 'actual pain in the hernial region;' and that the protrusion and pain were of such extent and severity as to be 'immediately noticed by the claimant.' "

The court further said (p. 396) :

"We agree with the court below that the legislature, by using the word 'manifestations' to designate the things required to be 'noticed by the claimant and communicated to the employer,' intended to include therein the 'effects of,' rather than 'a description of the cause which gave rise to,' the injury."

This leaves the remaining question, to wit, did the claimant give notice to his employer within 48 hours of this injury, within the meaning of the provision of the Act of April 13, 1927, P. L. 186, relating to injuries resulting in hernia?

The Workmen's Compensation Board, in affirming the findings and award of the referee, cites in support of its opinion paragraph 1 of the Act of June 20, 1883, P. L. 136, No. 122, which is as follows:

"Where by any existing law or rule of court, or by any law or rule of court that may hereafter be enacted and made, the performance or doing of any act, duty , matter, payment or thing shall be ordered and directed, and where any court shall, by special or other order, direct the performance or doing of any act, matter, payment, sentence or decree, and the period of time or duration for

the performance or doing thereof shall be prescribed and fixed, such time in all cases shall be so computed as to exclude the first, and include the last days of any such prescribed or fixed period, or duration of time: *Provided*, That whenever the last day of any such period shall fall on Sunday, or on any day made a legal holiday by the laws of this Commonwealth, or of the United States, such day shall be omitted from the computation: *And provided*, That this act shall not apply to the payment of negotiable paper."

In the frequently cited case of Lutz's Appeal, 124 Pa. 273, the Supreme Court in construing the above statute states that it is not retroactive, and, as the acts involved in that case occurred before that statute was enacted, the appellate court said that while the statute could have no effect upon the acts involved, nevertheless the said statute "is simply declaratory of the law as it existed prior to its passage."

In the case of Lutz's Appeal, the court held that where the last day of the 5 years during which a judgment remains a lien upon realty without revival falls on Sunday, a scire facias to revive is in time if sued out on the following Monday, and numerous cases by the Supreme Court are cited in the opinion in support of that conclusion.

The Supreme Court, in construing the above statute of June 20, 1883, P. L. 136, in the case of Herr v. Moss Cigar Co., 237 Pa. 232, held that it applies to the Mechanics' Lien Act of June 4, 1901, P. L. 431, where it is provided that a building contract containing a waiver of liens must be filed in the prothonotary's office within 10 days of its execution.

And in the case of Ehrhart v. Esbenshade, 233 Pa. 18, the Supreme Court held that where the last day for the replevying of goods levied on under a distress for rent falls on Sunday the tenant has all of Monday in which to replevy them; and to the same effect is Camac v. Reese, 6 D. & C. 764.

The court is unable to find any decision by the appellate courts of Pennsylvania on this question of whether such notice of injury resulting in a hernia is properly made within the meaning of the Act of April 13, 1927, when "communicated" to the employer within 48 hours of the time of the accident, excluding an intervening Sunday. However, we find one county court decision construing an act requiring a notice to be given within a stated period numbered in hours: Tyger v. Chambers, 64 Pitts. Legal Journal, 697. In that case the Court of Common Pleas of Jefferson County held that the above-cited act of June 20, 1883, P. L. 136, applied to the 72-hour period fixed by section 1 of the Act of April 14, 1905, P. L. 163, for filing a counter-bond in replevin actions, and that under that statute Sunday would be excluded from the computation.

This court is of the opinion that if the above-cited statute of June 20, 1883, P. L. 136, is controlling in such highly important matters as the issuing of a writ of scire facias to revive a judgment and the equally important requirement as to filling notice under the Mechanics' Lien Law, and various other statutory requirements done in the transaction of important business affairs often involving large sums and matters of vital import to litigants, there is no good reason why that statute should not apply to this Act of April 13, 1927, P. L. 186, which provides for the time and manner of giving notice by one who has sustained a so-called rupture or hernia.

In Damron v. Johnson, 112 Ky. 350, 233 S. W. 745, it was held that Sunday is not included as one of the five days allowed for tabulation of votes in filing of notice of contest. There the Court of Appeals of Kentucky said in its opinion: "The general rule is that if the time within which an act may be done exceeds a week, Sunday is included, but if it is less than a week, Sunday is not included", citing several authorities from that jurisdiction.

Appellant contends that the above Act of June 20, 1883, P. L. 136, should not apply to those cases where the statutory requirement as to notice is limited by a period stated in hours, as in the instant case, or where the act to be done may be legally done on Sunday, and refers to 38 Cyc. 334.

However, the court finds upon referring to this citation that, while the text apparently states such a principle, nevertheless the cases cited there in the footnotes hardly justify the text. A few cases construe local state statutes, and one of them, Bundy v. Maginess, a California case, reported in 18 Pac. 668, is directly contrary to that text and construes the following requirement in a local statute: "When trial by jury has been had, judgment must be entered . . . within twenty-four hours after the rendition of the verdict", to mean that when a verdict was rendered on Saturday night and judgment was not entered until the following Monday, such entry on Monday did not invalidate the judgment.

Furthermore, in referring to this citation relied on by appellant, it is important to note that it does not appear from the reports of the few decisions in 38 Cyc. 334, that there was any statute in those jurisdictions containing provisions similar to those in the above statute existing in Pennsylvania, the Act of June 20, 1883, P. L. 136, excluding Sundays from computation when the final day when the act should be performed happens to fall on Sunday.

Counsel for appellant also cited to the court the decision of the Court of Common Pleas of Somerset County in the case of Drazenovich v. Consolidated Coal Company, May T., 1932, No. 287, to the effect that Sunday should not be excluded in computing the period of 48 hours from the happening of the alleged accident and injury. However, counsel were unable to furnish the court with any decisions by the appellate courts of Pennsylvania to that effect, and this court is of the opinion, in view of the provisions of the Act of June 20, 1883, that in construing the Act of April 13, 1927, Sunday should be excluded in computing time in which notice should be given in those cases where the 48-hour limit would otherwise expire on Sunday.

We feel it is highly important, in construing this statute of April 13, 1927, requiring notice as to hernia, to remember that it is a matter of common knowledge and observation that on Sunday, throughout our State, the vast majority of business and industrial concerns are closed, with no one in an executive or supervisory capacity present at such plants, to whom notice might be given even though an injured claimant attempted to do so. In fact many of these executive officers and superintendents are frequently absent from their homes on that day on week-end trips. And to place upon an injured claimant, suffering pain and greatly handicapped thereby, the duty of attempting to reach the residence of any of the executive officers or others in supervisory capacity connected with his employer's plant would, in many cases, entail an obligation that it would be physically impossible to comply with.

In the instant case, claimant was asked when he reported this accident to employer and answered: "On Monday morning. I could not get hold of them on Sunday so I reported on Monday morning." And he further testified: Q. You did not ask the employer, the Keeler Company, to send you to the doctor? A. No, I went right down, I could not get hold of them at that time. Q. You reported to Mr. Kopp on Monday morning? A. Yes.

From the record of claimant's formal application it appears that the Mr. Kopp mentioned in his testimony was his "boss" at the defendant's plant. And it is undisputed that this notice to Mr. Kopp, a foreman or superintendent of

the defendant, was given by the claimant on Monday morning, April 11th, following the alleged accident and injury.

From the foregoing testimony it is plainly evident that the claimant made some efforts to notify his employer on the Sunday following the accident and that such attempt was clearly within the 48-hour period, and he was unsuccessful and reported to his employer the following Monday morning. What means or methods were employed by claimant in his endeavors to reach his "boss" or others officers of the defendant do not appear on the record. However, the court cannot refrain from stating that the defendant company had ample opportunity to examine the claimant on this point, even to the extent of asking for a rehearing for that purpose, and having failed to do so it must be admitted, on the face of the record, that claimant did endeavor to notify his employer of his accident and injury on the Sunday following the accident, which was well within the 48-hour limit.

It is apparent that in enacting this requirement the legislature intended to give the employer an early opportunity to inquire into the facts surrounding the happening of the alleged accident to and have a physical examination promptly made of the employe's condition to ascertain the nature and extent of the injury and to determine whether the rupture was caused at the time of the alleged accident or was preëxisting or of a chronic nature. But it was not intended, in its application, to be made so difficult of performance as to amount to a virtual prohibition of a remedy.

Surely, the legislature could not have intended to insist on a requirement where, in many instances, on a Sunday it would be practically impossible for an injured employe or the members of his family in the exercise of reasonable diligence to give notice to the employer. And, as above stated, it is a matter of common knowledge that practically all manufacturing and industrial plants are closed except the few engaged in furnishing service of a public utility nature, and the officers and others employed in a supervisory capacity are usually at widely scattered homes and frequently out of town on the Sabbath day.

This court feels that it is a fair interpretation of the Act of June 20, 1883, which act declares that it shall apply to any existing law or to any law that may thereafter be enacted, that it was intended to cover just such conditions and emergencies as might arise where, if required to reach his employer on Sunday, an injured employe would be unduly handicapped, and it would impose too severe a hardship on him to travel about a city to locate some officer of the employer corporation or to attempt to reach him by messenger. Such a requirement would impose the duty on the employe of knowing the names and addresses of the officers of the employer corporation. Furthermore, if the injured employe happened to reach the residence of someone in official capacity in the employer company, by telephone or messenger, on a Sunday, then the further question might be raised that such notice by telephone or messenger, given perhaps to some domestic employed in the employer's home, was not a proper notice to the employer. And it might frequently result that a domestic servant or member of the official's family would forget or fail correctly to interpret and deliver the message to the proper person.

Furthermore, this court does not believe that it was the intention of the legislature to make an employer, under the Workmen's Compensation Act, such a pronounced favorite of the law as to exempt him from the provisions of the said Act of June 20, 1883, which otherwise applies to interested parties in such vitally important matters as reviving judgments, filing notice of mechanics' liens, and many other acts involving property rights, which our appellate courts have

repeatedly held are covered by the provisions of the said Act of June 20, 1883, as to the performance of an act where the final day for doing the same falls on Sunday.

We feel that if an employer were to be exempted from the operation of the above provisions of the Act of June 20, 1883, P. L. 136, as to the time limit for giving notice of injury in hernia cases, then under this provision of the Workmen's Compensation Act such employer would be given a privilege and exemption not enjoyed by other citizens in many other matters of equal or greater importance, and it would constitute a clear-cut discrimination in favor of such employer and against the rest of the business world.

Further, in weighing this matter it is also pertinent to remember that workmen's compensation acts are considered generally by the various jurisdictions as being statutes of a remedial character, the provisions of which should be considered broadly and liberally in order to effectuate their purpose, and this rule of liberal construction may be taken as a guide in construing the provision requiring notice of the injury to be given the employer by or on behalf of the injured employe.

In the instant case, the claimant was injured at 3.45 p. m. on Friday, April 8, 1932, and, numbering the hours in consecutive order, the 48-hour limit would otherwise expire at 3.45 Sunday afternoon, April 10th. However, the claimant, as shown by the testimony, could not reach his employer or "boss" on that day and did give notice to his employer on the following Monday morning, April 11th, beyond the time limit for giving such notice if computed in consecutive hours. The court is of the opinion that this requirement of the Act of April 13, 1927, P. L. 186, clearly comes within the provisions and is controlled by the above cited statute of June 20, 1883, P. L. 136, which expressly states:

"Where by any existing law or rule or court, or by any law or rule of court that may hereafter be enacted and made, the performance or doing of any act, duty, . . . or thing shall be ordered and directed, . . . and the period of time or duration for the performance or doing thereof shall be prescribed and fixed, . . . whenever the last day of any such period shall fall on Sunday, . . . such day shall be omitted from the computation."

Therefore, we believe that applying the clearly-intended meaning of the above statute to this provision contained in the Act of April 13, 1927, P. L. 186, requiring 48-hours' notice from the time the hernia occurs, justifies the conclusion that where the expiration of such 48 hours falls on a Sunday, that day shall be excluded from the computation of the 48-hours' time, and applying that construction to the instant case we are of the opinion that the notice given by claimant to his employer's foreman on the following Monday morning was in time and a proper compliance with the above cited provisions of the Act of April 13, 1927.

## Order

And now, to wit, July 24, 1933, the within appeal is dismissed, the award of the referee, sustained by the Workmen's Compensation Board, is affirmed, and judgment is hereby entered in favor of the claimant and against the said defendant, E. Keeler Company, for the full amount of the award as made by the referee in this claim, to wit, $15 per week for a period of 65 days, amounting to $139.28, and also for the amount of reasonable medical, surgical, and hospital expenses incurred during the first 30 days of his disability and the amount of costs in the matter.

From Harry Alvin Baird, Williamsport, Pa.